Martin, C. J.
Plaintiffs are owners of three contiguous parcels of land in the town of Land O’Lakes, Vilas county, described as the southwest quarter of the southwest quarter and government lot 5, both in section 25, township 43 north, range 9 east, and lots 18 and 19, block 1, plat of North Shore, Black Oak Lake. The Lowenstine family acquired the southwest quarter of the southwest quarter and lots 18 and 19 in 1946 and government lot 5 in January of 1956. The eastern boundaries of lots 18 and 19 and government lot 5 are the shore of Donahue lake.
Sometime in the early 1930’s one Richard Osborne was the owner of government lot 5 and he had access to his property by a route referred to as the Osborne road, which started at the northwest corner of lot 19 and ran north to a point about in the center of the southwest quarter of the southwest quarter, turned generally northeast into government lot 5 and thence south to a pear-shaped turnaround near the shore of Donahue lake. In 1946 an interest in government lot 5 was acquired by Les Newell. On November 17, 1947, Newell and his wife joined several other petitioners in applying to the town for the establishment of a new highway (hereinafter referred to as the Newell road) and the discontinuance of an old highway, the Osborne road described above. At about the same time, Newell obtained verbal permission from Lowenstine to cross lots 18 and 19 to get to government lot 5, and then proceeded to open a road, similar in layout to the road described in the application. He testified he paid for the road out of his own funds and proceeded to use it. He considered it a *502 private road and in 1950 extended a cable across the road between two trees.
The application of November 17, 1947, by Newell et al., described the proposed new highway as follows:
“Commencing at the point where the southwestern corner of lot 18, block 1 of plat of North Shores, Black Oak Lake, in gov’t lots 2-3 and part of gov’t lot 4, section 36, township 43, north range 9 east, Vilas county, intersects the present town road, thence northerly across lots 18 and 19 thereof to the south boundary of the southwest quarter of the southwest quarter, section 25, township 43, north range 9 east at a point 550 feet, more or less, west of the southwest corner of government lot five (5) same section 25, thence east 550 feet, more or less, to the southwest corner of said gov’t lot 5, same section 25.”
There is in evidence a notice of a town board meeting showing that on January 3, 1948, a hearing was set for the evening of January 16, 1948, to “decide upon such application.” There is also a blank proof of posting and an incomplete draft of a town board order on the subject. Exhibit F is a carbon copy of the town clerk’s letter to the town attorney, dated January 18, 1948, stating:
“Referring to your instructions addressed to our chairman, relative to the application of J. F. Iiandlos for the laying out of a new highway and discontinuing another one.
“The town board on January 16, 1948, passed a resolution approving the application and all the papers in the case are inclosed. Any paper the clerk should have except the copy of the notice which was posted by the clerk, you can return for his file.”
No order laying out the road has been found. Violet Becker, present town chairman, who was town clerk between 1953 and 1959, testified with respect to the records kept by the clerk who was in office at the time of the proceedings in question:
*503 “A. Well, the first ten years he was clerk I would say they were well kept, but he was quite an old gentleman and the last few years they even had to have a clerk, a typist to take the minutes of the meeting. He was unable to do it. Many of the records are not complete. . . . Sketchy and some not there at all.”
Sec. 80.01 (1), Stats., so far as applicable, provides:
“All highways laid out by the town supervisors, . . . and recorded, any portion of which has been opened and worked for three years are legal highways so far as they have„been so opened and worked. The filing of an order laying out any highway ... in the office of the clerk of the town ... in which the highway is situated is a recording of such highway within the meaning of this section.”
Appellants take issue with the trial court’s statement that proper notice of the application was filed and posted, as required by law. Considering the fact that all the original papers concerning this matter were mailed to, but not returned by, the town attorney to the clerk, and from the several copies of such papers, the correspondence and other documents in the record, it was proper for the trial court to conclude that the statutory requirements as to notice and posting had been met. True, no order laying out the road is available, but, as the trial court stated, if the order had been filed with the town clerk, the fact that it could not now be found would not invalidate the highway since the evidence clearly shows that the road had been opened and worked for three years as a legal highway. The town board’s actions in building the road in 1948 and maintaining it continuously since that time indicate at least that the board assumed its approval of the application had been carried out in all respects as required by law.
The rule is so well established as to require no citation of authority, that the findings of fact of a trial court will not be set aside on appeal unless they are contrary to the *504 great weight and clear preponderance of the evidence. From the exhibits mentioned above it was proper for the trial court to infer that the proceedings for laying out the Newell road as a public highway were in fact completed as the statutes require. Some conflicting evidence was introduced, but it was for the trial court to resolve the conflict, and the evidence which it chose to believe is credible and supports the findings in that respect.
Testimony by the town chairman was to the effect that the Newell road was built in 1948 and the town worked on it, fixing one date as May 2, 1948, when she traveled the road to the Newell house the day before her daughter was born; that the road was wide enough for two cars to pass and also for a snowplow; that snowplowing of the Newell road was done by the town in 1949. Also in evidence are timecards kept by the town highway crew showing that work was done on the Newell road from November, 1949, to August, 1952 — grading, hauling gravel, bulldozing, snowplowing. The town assessor testified to the same effect. The road-maintenance foreman testified he had worked on the road since 1948 and 1949; that he had orders to take down the cable barrier when he found it across the road and that the town had always insisted the road was a town road and should be kept open.
It is not disputed that the town worked on the Newell road. After appellants acquired government lot 5 they attempted to have the town give a deed disclaiming any interest in any roads existing across their lands. Consideration for the proposed deed was to be $200, which appellant James Lowenstine testified was “for the work that they had done on Newell’s road, . . . that since we had the property and since we then bought from Henry Phillips government lot 5, that there was no longer a need for the town to work on our road . . .”
*505 The trial court further referred to the provisions of sec. 80.01 (4), Stats., which provides that every highway laid out or attempted and intended to be laid out by the proper authorities shall be held to have been lawfully laid out after five years, after which no defect in any proceedings, order, or resolution on the part of the authorities for such purposes shall invalidate the proceedings; provided the highway in question “shall be limited in length to the portion actually worked and used thereunder.”
In finding 2 the trial court described the Newell road essentially as described in the 1947 application, quoted above, but added the language “to intersect Donahue lake.” The finding was drawn by the attorneys for respondents. There is nothing in the record to sustain a finding that the Newell road intersected the lake. The basis of the trial court’s decision was the determination that the proceedings initiated in November, 1947, were valid. The town board could order the road laid out only as described in the application, which was “to the southwest corner of said gov’t lot 5.” It could not have ordered it extended “to intersect Donahue lake.”
While there is some dispute in the record as to whether there was in fact a road from the southwest corner of lot 5 to the lake, the great weight of the evidence is that no such extension of the Newell road existed. The testimony showed the area in question is a beach, a wide, open, sandy area; that the Newell road went only to Newell’s cabin, which was apparently just east of the southwest corner of his lot; and that from where the road ended to the lake it was a wide, sandy beach.
There is no question here involving public access to the lake. Some attempt is made by respondents to show that the old, discontinued Osborne road provided access for the public, but the record does not support such a contention. The evidence shows that the closest distance of the Osborne *506 road to the lake was 150 feet. The gas-mileage map in evidence likewise shows the road not to extend to the lake shore.
The discrepancy between the description in the 1947 application and the findings and judgment which describe the Newell road as extending to the lake was not discovered until sixty days after the notice of entry of judgment. The trial court determined that it had lost jurisdiction, and appellants had no alternative but to appeal to this court.
By the Court. — Judgment affirmed in so far as it determines the road petitioned for in 1947 is a duly laid-out public road; judgment reversed in so far as it describes the route of such road as extending beyond the southwest corner of government lot 5, and cause remanded with instructions to enter judgment describing the road as set forth in the application dated November 17, 1947. Appellant will be allowed costs in this court.